**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*2:25 pm, Apr 20, 2026*
**JEFFREY P. COLWELL, CLERK**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-CV-03641-RTG

JEANNE M. McCARTHY,

Plaintiff,

v.

PARKER POLICE DEPARTMENT,

OFFICER LESLIE MATTERN,

OFFICER CASEY CASHMAN,

SERGEANT MARK TERREAULT,

CHRISTINE DURBIN PPD DISPATCH,

Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff JEANNE M. McCARTHY, individually, alleges as follows:

**I.  INTRODUCTION**

This is a civil rights action arising from the unlawful actions of Parker Police Department officers on November 12, 2023, at the private residence of Plaintiff Jeanne M. McCarthy in Parker, Colorado. Officers acting under color of state law entered the Plaintiff's property without a warrant, exigent circumstances, or consent; subjected her to excessive force; conducted an

unreasonable search and seizure; violated her Fifth Amendment right against self-incrimination; and arrested her without probable cause.

These acts violated Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983.

## II. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiff's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

2. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events and omissions alleged herein occurred within the State of Colorado. At the time of the events and omissions giving rise to this litigation, all parties resided or were employed in Colorado.

## III. PARTIES

3. Plaintiff Jeanne M. McCarthy is a citizen of the United States of America and a resident of Parker, Colorado, residing at 11577 Larkspur Drive, Parker, CO 80134.

4. Defendant Officer Leslie Mattern (Badge No. 2104) is and was at all relevant times employed as a law enforcement officer by the Parker Police Department, located at 18600 Lincoln Meadows Pkwy., Parker, CO 80134. She is sued in her individual and official capacities.

5. Defendant Officer Casey Cashman (Badge No. 0106) is and was at all relevant times employed as a law enforcement officer by the Parker Police Department at the same address. He is sued in his individual and official capacities.

6. Defendant Sergeant Mark Terreault is and was at all relevant times a supervisor employed by the Parker Police Department at the same address. He is sued in his individual and official capacities.

7. Defendant Christine Durbin is and was at all relevant times a Dispatch Operator employed by the Parker Police Department at the same address. She is sued in her individual capacity.

8. Defendant Parker Police Department is and was a department within the municipal corporation of the city of Parker Colorado. Parker Police Department is responsible for the oversight, supervision and training of the Parker Police officers and its staff. Parker Police department was at all relevant times the employer of all defendants and is a proper entity to be sued under 42 U.S.C. § 1983.

## IV. FACTUAL ALLEGATIONS

### The REDDI Report Call

9. On November 12, 2023, at 5:35 PM, a civilian Reddi Reporter (RR), Alyssa Vossler, placed a 10-digit call reporting an "intoxicated or distracted driver." The call was received by Parker Police Dispatch Operator Debra Daily and classified as a Priority 3 non-emergency. (See Dispatch Audio and pg. 1 of 14 'Ditto' transcript.)

10. Vossler stated the location as: "We're coming off Stroh, about to turn Northbound onto Parker Rd." Vossler was unable to identify the vehicle's color, stating, "I can't tell because it's dark," and further stated she did not get a look at the driver, then added, "He just got over."

10. The dispatcher stated: "Now, if we're able to locate the vehicle." And: "We'll get someone dispatched." (See Pg 4 of 'Ditto' transcript and Dispatch_Audio_DA.)

11. Defendant Mattern asserts that she was advised of the home address where Plaintiff resides, at 11577 Larkspur Drive, Parker, Colorado 80134. However, the dispatcher does not advise Defendant Mattern to drive to Plaintiff's home and wait three houses down. The dispatcher stated: "Okay. Now if we're able to locate the vehicle and the party is driving under the influence, are you willing to sign as a witness?" Followed by: "Alright. We'll get an officer dispatched." (See Dispatch_Audio_DA and Ditto transcript Pg 4, lines 12–16.)

### Plaintiff Returns Home

12. At approximately 5:46 PM, Plaintiff and her daughter, Angie, returned home. Plaintiff noticed a patrol vehicle parked three houses down, beneath an illuminated street lamp. The conditions were dark, yet the neighborhood was unusually well-lit. The home was undisturbed, peaceful, and quiet inside and out.

13. Plaintiff was parked perfectly within a confined space, with the garage door nearly fully closed.

### Defendant Mattern's Unlawful Entry and Use of Excessive Force

14. On November 12, 2023, at 5:47 PM, Defendant Mattern, while acting under color of law, trespassed onto Plaintiff's private property without a warrant, exigent circumstances, or consent, in violation of Plaintiff's Fourth Amendment rights.

15. Defendant shouted: "Parker Police, can you open please!?" Plaintiff was startled and immediately perceived the loudness and tone as a command. Plaintiff has a preexisting trauma causing a persistent fear of law enforcement. Plaintiff complied and reactivated the garage to open.

16. Defendant Mattern directed a high-lumen flashlight into Plaintiff's eyes, causing pain and irritation, while asking a series of interrogating questions: "Where were you? What did you do? Where did you come from? What route did you take? Do you remember the route you took home? Did you eat? Did you have anything to drink? What did you drink? How many?"

17. Plaintiff admitted to consuming one drink, which had been consumed approximately four hours before the home intrusion. Plaintiff provided a credit card receipt confirming the time of purchase.

18. Plaintiff declined Field Sobriety Tests, politely stating: "No. I'm home." Defendant Mattern became visibly upset. Plaintiff stated she would not be answering further questions. Defendant's anger escalated: "Okay. Well then, you're not going anywhere."

19. Defendant Mattern ordered Plaintiff to "Step outside!" Plaintiff firmly replied, "No." Defendant then asked: "Well then, do you mind if I come inside?" Plaintiff replied: "Yes. I mind...Yes. I mind."

20. Defendant Mattern entered the garage, shouting, "You're not safe. Jeanne, you're not safe!" Plaintiff replied: "I'm home. Yes, I am safe."

21. Defendant Mattern entered the garage, then aggressively grabbed Plaintiff by the arm and forced her out of the garage. Plaintiff was near a wall of shelving and was attempting to secure her purse, mobile phone, and sunglasses. Defendant Mattern used excessive force— jerking, tugging, and pulling Plaintiff, pushing her up against a brick wall, and digging and tightly squeezing Plaintiff's arms, causing multiple bruises and pain. Defendant shouted: "Stop moving!" Plaintiff replied: "Seriously? You're moving me."

22. Defendant Mattern aggressively yanked the sunglasses from Plaintiff's head and threw them to the pavement, breaking them beyond repair (valued at $250). Defendant also grabbed Plaintiff's phone and threw it to the pavement, causing scratches to the glass and cracking the protective cover, requiring replacement. Defendant did not allow Plaintiff to remove her cross-body shoulder bag and, in her agitation, cuffed the purse to Plaintiff's wrist.

23. Plaintiff was detained at 5:51 PM. (See Dispatch CAD notes.) Defendant Mattern failed multiple attempts to release the purse and required backup to assist. Defendant Mattern conducted an aggressive search of Plaintiff's person and purse without consent, while still attempting to detach the purse. Defendant then aggressively dragged Plaintiff down the inclined driveway and ordered her to stand in front of the patrol vehicle. (See pg. 31 of DOR hearing: "So I had to push her up against the wall to get the handcuffs on.")

### Arrival of Defendant Cashman and Second Search

24. At 5:53 PM, Defendant Casey Cashman arrived without a warrant, exigent circumstances, or consent. (See Dispatch CAD notes.) In his police report, Defendant Cashman documents arriving at 4:47 PM—an apparent discrepancy. Defendant Cashman used his key to unlock and release the purse from Plaintiff's wrist.

25. A second, even more aggressive search occurred, with Defendant Cashman watching. Defendant Mattern lifted Plaintiff's shirt, exposing her abdomen. Plaintiff was totally humiliated as neighbors watched from windows and garages, who later asked and texted messages such as, "Oh my god! Are you okay?"

26. Plaintiff was led to the back of Defendant Mattern's patrol vehicle and pushed into the backseat, causing her to fall hard. One leg was stretched to the left (behind the driver's side) and the other (right leg) was folded and pinned beneath Plaintiff's body, lodged outside the vehicle in the curb. Defendant Mattern ordered Plaintiff to "Get up!" Plaintiff replied: "No. I can't move. You have to pick me up." Defendant

Cashman lifted Plaintiff and seated her upright. Defendant Cashman said nothing to Defendant Mattern about the use of excessive force.

27. After a 3–4 minute encounter, Plaintiff was handcuffed, detained, and charged with DUI and Obstruction at 5:51 PM. (See CAD report Pg 5 of 14.) No probable cause existed. The Probable Cause to Detain Determination was not executed and was not signed by a judiciary officer.

### Physical Injuries Sustained by Plaintiff

28. Plaintiff's right knee locked and buckled as a result of how she was placed in the patrol vehicle. As Plaintiff waited for the medical team to arrive, she slowly rotated her ankle and was able to get the knee joint to fall back into place. Defendant Mattern insisted on taking Plaintiff to the hospital for medical clearance.

29. The following morning, Plaintiff awoke with excruciating knee pain. She could not apply weight or pressure. Getting in and out of bed was difficult. This lasted approximately three weeks. To this day, Plaintiff's knees have never been the same —the bones make crackling sounds and randomly lock or buckle. Plaintiff can no longer perform free-standing squats, walk on a treadmill without holding on, or use stairs without gripping handrails.

30. Plaintiff has suffered many sleepless nights due to shoulder and knee pain caused by Defendant Mattern's excessive use of force.

### Defendant Sergeant Terreault's Failure to Supervise

31. Defendant Sergeant Terreault arrived on scene and did not say or do anything to stop his officer's unlawful arrest, and did not take any action to protect Plaintiff from police misconduct.

32. Sergeant Terreault was contacted by Plaintiff's ex-spouse, Terry Kassem, who explained they resided together and that he was very concerned for Plaintiff's safety. Mr. Kassem stated that he was not home but watched everything unfold from his home security cameras and wanted to know why officers were on the property without a warrant.

33. Defendant Terreault stated: "My officers had every right to be on your property, because your wife was involved in a fresh pursuit." This reply was fabricated to justify an unwarranted intrusion where no emergency existed.

### Defendant Mattern's False Statements Regarding Dispatch and Location

34. Throughout all reports, affidavits, DOR hearings, and court testimony, Defendant Mattern documented that she responded first to 16900 Crowfoot Valley Road and N.

Pinery Pkwy.—an address outside of her jurisdiction, which she admitted during the DOR hearing. (See page 37 of DOR hearing.) Defendant Mattern then struck through 16900 and changed her documentation to "In the area of" Crowfoot Valley Road and North Pinery Parkway.

35. Neither of these addresses is mentioned or included in the audio/video discovery. When asked by Dispatch where the reporter was located, the Reddi Reporter replied: "We are getting ready to turn North on Parker Road coming off Stroh." (See Dispatch_Audio and CAD report Pg 1 of 14.)

36. The Motions Hearing was held before Judge Lawrence Bowling on September 24, 2024. Officer Leslie Mattern was sworn and took the stand as the People's witness. During Direct Examination, Sarafina Ramalho, Esq. (for the People) asked: "And where were you on November 12, around 5:35 PM?" Mattern responded: "I was on patrol and dispatched to a REDDI report, which stands for report every drunk driver immediately, in the area of Crowfoot Valley and North Pinery Parkway." Officer Mattern was not dispatched to this address. (See dispatch call from Reddi Reporter and 'Ditto' transcript page one.) (See pg. 4 of Aapex Legal Services, LLC transcript.)

37. During sworn testimony at the Department of Revenue (DOR) hearing, Defendant Mattern admitted under cross-examination: "I did not review the dispatch calls, and I did not speak to Alyssa, so I cannot testify to that." Officer Mattern reiterated: "Again, I did not speak to Alyssa." (See 'Ditto' transcript: Page 39, line 19, and Page 40, line 3.)

### Witness Discrepancies: Durbin and Vossler

38. The second named defendant, Christine Durbin, a Dispatch Operator for the Parker Police Department, did not call 911. Durbin provided a witness statement at approximately 9:30 p.m. Durbin's initials (CD) are notated on page 6 of 14 at approximately 5:57 p.m. and again on page 12 of 14 at approximately 6:36 p.m. of the PPD CAD record.

39. Line five of Durbin's witness statement states: "that car stayed in front of me." In contrast, the Reddi Reporter stated: "Way back, I followed him on Crow." (See page 1, line 22 of Ditto Transcript.) During a recorded call, Vossler further stated: "It was the car, in front of the car, in front of me."—stated twice. This is recorded on Defendant Cashman's body cam and included in the Discovery.

40. On July 3, 2025, while under oath and facing the jury, Vossler asserted that she followed behind the driver the entire time. Plaintiff is awaiting the court transcript, ordered in early September 2025.

41. Officer Cashman and Christine Durbin were listed as witnesses for the Prosecution. Both were dropped one day before the criminal (DUI) trial. Plaintiff was informed by her Public Defender, Erica Anderson, on July 1, 2025.

## V.  STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### 42 U.S.C. § 1983 – Fourth Amendment: Unlawful Entry and False Arrest (Against Defendants Mattern, Cashman, and Terreault)

42. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

43. At all times relevant to this claim, Defendant Mattern was acting under color of state law in her capacity as a Parker Police Department Officer.

44. Plaintiff had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures, including warrantless entry onto her private property and arrest without probable cause.

45. Defendant Mattern, without a warrant, exigent circumstances, or consent, entered Plaintiff's private property and arrested her without probable cause.

46. The court record reflects that the Determination of Probable Cause to Detain affidavit was not executed or signed by a judicial officer.

47. During sworn testimony at the DOR hearing, the arresting officer admitted under oath that she did not speak with the witness, Alyssa Vossler, prior to the arrest.

48. Defendants Cashman and Terreault failed to intervene to stop the unlawful arrest and entry.

49. The acts or omissions of each Defendant were the legal and proximate cause of Plaintiff's damages.

50. As a direct result of Defendants' unlawful actions as described above, Plaintiff suffered actual physical, emotional, and economic injuries in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF

#### 42 U.S.C. § 1983 – Fourth Amendment: Excessive Force (Against Defendant Mattern)

51. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

52. Plaintiff had a clearly established constitutional right under the Fourth Amendment to be free from excessive and unreasonable force.

53. Defendant Mattern unlawfully and excessively grabbed, pulled, pushed, and dragged Plaintiff, slammed her against a brick wall, threw Plaintiff's personal property onto the pavement, and forcibly pushed Plaintiff into the backseat of a patrol vehicle in a manner causing injury.

54. Defendant Mattern's actions were objectively unreasonable in light of the facts and circumstances confronting her.

55. Defendant Mattern's actions were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiff's federally protected rights.

56. Defendant Cashman observed the excessive force and failed to intervene.

57. The acts or omissions of each Defendant were the legal and proximate cause of Plaintiff's damages.

58. As a direct result of Defendant Mattern's unlawful actions, Plaintiff suffered significant physical injuries, including knee damage, shoulder pain, bruising of her arms, and lasting physical impairment, as well as emotional injuries and economic losses, in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

**42 U.S.C. § 1983 – Fourth Amendment: Unreasonable Search and Seizure (Against Defendants Mattern and Cashman)**

59. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

60. Plaintiff had a clearly established constitutional right under the Fourth Amendment to be free from unreasonable searches and seizures of her person and property.

61. Defendants Mattern and Cashman, without consent, without exigent circumstances, and absent probable cause, searched Plaintiff's person aggressively—twice—and searched her purse.

62. Defendant Mattern seized and destroyed Plaintiff's personal property, including her $250 sunglasses and $1,200 mobile phone, by throwing them onto the pavement.

63. The acts or omissions of each Defendant were the legal and proximate cause of Plaintiff's damages.

64. As a direct result of Defendants' unlawful actions, Plaintiff suffered economic damages including the destruction of personal property, and further emotional distress and humiliation, in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF

**42 U.S.C. § 1983 – Fifth Amendment: Compelled Self-Incrimination (Against Defendant Mattern)**

65. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

66. Plaintiff had a clearly established constitutional right under the Fifth Amendment to be free from compelled self-incrimination.

67. While shining a high-lumen light directly into Plaintiff's eyes, Defendant Mattern subjected Plaintiff to a coercive and prolonged interrogation, demanding answers to questions including: "Where were you? Where are you coming from? What did you do? Did you eat? Did you drink? What did you drink? How many? What route did you take? Do you know what route you took? How did you get home?"

68. Plaintiff ultimately exercised her right to remain silent and declined to answer further questions. Defendant Mattern's visible anger and escalating conduct in response to Plaintiff's invocation of her rights further violated Plaintiff's Fifth Amendment protections.

69. The acts or omissions of Defendant were the legal and proximate cause of Plaintiff's damages.

**FIFTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Fourteenth Amendment: Due Process / Malicious Prosecution (Against All Defendants)**

70. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

71. Plaintiff was detained and arrested without probable cause, without a warrant, and without exigent circumstances, in violation of her Fourteenth Amendment rights to due process.

72. The Probable Cause to Detain Determination affidavit was not executed or signed by a judicial officer.

73. Defendant Terreault falsely justified the warrantless entry by stating officers had "every right to be on your property" due to a "fresh pursuit"—a fabrication unsupported by the dispatch records or any evidence.

74. The acts or omissions of each Defendant, including the false and misleading statements made to justify the arrest, were the legal and proximate cause of Plaintiff's damages.

75. As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered actual physical, emotional, reputational, and economic injuries, including the trauma of a wrongful criminal prosecution, in an amount to be proven at trial.

**SIXTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Unconstitutional Customs, Policies, and practices**

**(Against Defendant Parker Police Department)**

76. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

77. Parker Police Department failed to properly train, supervise and discipline its employees,

Including all defendants, with respect to the use of excessive force, omitting many practice disclosures, for example reading the Miranda rights to a suspect who is about to be interrogated.

78. Parker Police Department failure to, in its supervisory duties, adequately train, supervise, discipline, and investigate its officers despite having a sergeant present on site.

79. Parker Police Department policies, customs, practices and protocols in handling non-exigent circumstances and a low priority (P-3) call magnifies a system disconnect and failure.

80. The acts or omissions of each Defendant, including the unconstitutional policy, procedure, protocol, custom described herein were the legal and proximate of Plaintiff's damages.

81. As a direct result of Defendants actions and negligence as described above, Plaintiff has been and continues to be damaged from actual physical, emotional and economic injuries in an amount to be proven at trial

82. The actions or omissions of Parker Police Department as described herein deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution Of The United States Of America and caused her subjection to humiliation.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against each of the Defendants, and award her all relief allowed by law, including but not limited to the following:

- All appropriate relief at law and equity;

- Declaratory relief and other appropriate equitable relief;

- Economic losses on all claims as allowed by law, including destruction of personal property;

- Compensatory and consequential damages, including damages for physical injury, emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law, in an amount to be determined at trial;

- Punitive damages on all claims allowed by law and in an amount to be determined at trial;

- Future Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

- Pre- and post-judgment interest at the appropriate lawful rate; and

- Any further relief that this Court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this  17th day of April, 2026.

*Jeanne M Mcarthy*

_____

Jeanne M. McCarthy

11577 Larkspur Drive

Parker, Colorado 80134 (720)

477-8717 mjenann@gmail.com

*Plaintiff, Pro Se*

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. See 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Jeanne M Mcarthy*

_____

(Plaintiff's signature)

April 17th, 2026